IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SANDRA TORRES LOPEZ,

    Plaintiff,

       v.

    CIVIL NO. 14-1165 (PG)

ALEJANDRO GARCIA-PADILLA, ET AL.,

    Defendants.

<u>OMNIBUS OPINION AND ORDER</u>

Plaintiff Sandra Torres-Lopez ("Torres-Lopez" or "Plaintiff") filed the instant action against defendants Hon. Alejandro Garcia Padilla's ("Garcia-Padilla") and Javier Rua-Jovet's ("Rua-Jovet")(collectively, "Defendants"), in their official and individual capacities, alleging violations of the First, Fifth and Fourteenth Amendments to the United States Constitution, and of Puerto Rico law.[1] <u>See</u> Docket No. 1. Plaintiff claims that Defendants conspired among themselves to remove her from the Chairperson position of the Telecommunications Regulatory Board of Puerto Rico ("TRBPR") solely because of her political affiliation to the New Progressive Party ("NPP"). <u>Id.</u> at pp. 6-7. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages pursuant to Section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, and Puerto Rico law. <u>Id.</u> at pp. 9-11.

Before the court are Defendants' motions to dismiss the complaint (Docket Nos. 69 and 70), and Plaintiff's opposition thereto (Docket No. 74).[2] For the reasons set forth below, the court **GRANTS** the Defendants' motions.

I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

Established in 1996, the TRBPR is "the agency in charge of regulating telecommunication services in Puerto Rico and of enforcing

---

[1] Plaintiff invoked the court's supplemental jurisdiction over the claims arising under Article II, § 4 of the Puerto Rico Constitution, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

[2] Garcia-Padilla and Rua-Jovet (in his individual capacity) filed a reply to Plaintiff's opposition. <u>See</u> Docket No. 79.

[3] The court will only recite the relevant, necessary facts for the adjudication of the pending motions to dismiss. For a more detailed background of the case, the court refers to that included in the undersigned's Opinion and Order from June 12, 2015, denying Torres-Lopez' request for preliminary injunction. <u>See</u> Docket No. 65.

compliance and administrating" the provisions of its enabling act, Puerto Rico Telecommunications Act of 1996, Law No. 213 of 1996, as amended ("Law 213"). See P.R. Laws Ann. tit. 27, § 267 (West 2013). Under Law 213, the TRBPR (or the "Board") would "be composed of three (3) associate members, one of whom [would] be its Chairperson, appointed by the Governor with the advice and consent of the Senate." P.R. Laws Ann. tit. 27, § 267(a) (amended 2013). On November 16, 2009, Torres-Lopez was appointed to the position of Chairperson of the TRBPR by then-Governor Luis Fortuño, with the advice and consent of the Senate. Docket No. 1 at ¶ 7. Her appointment was for a six-year term, set to expire on November of 2015. Id. at ¶ 12.

Following the 2012 General Elections, the Government of Puerto Rico changed hands, and soon thereafter, the Legislature enacted Law No. 11 of April 26, 2013 ("Law No. 11"), which purportedly "abolished" the Chairperson position that Law 213 had created. See Docket No. 70. The complaint alleges that Torres-Lopez was subsequently removed from the Chairperson position when Rua-Jovet presented himself at the TRBPR offices as the newly-appointed Chairperson of the TRBPR on July 1, 2013. Docket No. 1 at ¶ 17. Torres-Lopez nevertheless remained as an Associate Member of the TRBPR.[4] Id.

Plaintiff did not contest Defendant's alleged actions until the filing of the above-captioned complaint on March 3, 2014. See id. On that same date, Torres-Lopez filed an urgent Motion for Temporary Restraining Order and Injunction (Docket No. 3) requesting, in relevant part, that this court order Defendants to vacate Rua-Jovet's appointment and to reinstate her to the position of Chairperson of the TRBPR. The court denied the TRO request and held an evidentiary hearing on plaintiff's preliminary injunction request. See Docket No. 14.

On June 15, 2015, the court denied Torres-Lopez' preliminary injunction request on both Fourteenth and First Amendment grounds. See Docket No. 65. Also, in accordance with the First Circuit Court of Appeals' rulings in the sister cases of Torres-Rivera v. Garcia-Padilla, 783 F.3d 42 (1st Cir.2015), Montanez-Allman v. Garcia-Padilla, 782 F.3d 42 (1st Cir.2015), and Diaz-Carrasquillo v. Garcia-Padilla, 750 F.3d 7 (1st

---

[4] The complaint only alleges that the associate member position "is not the one she was appointed to." Id. It fails to state whether any material consequences (e.g., a change in compensation) ensued.

Cir.2014), the court dismissed plaintiff's Due Process claims under the Fourteenth Amendment without prejudice to allow her to file suit in Puerto Rico court.[5] Consequently, only Plaintiff's claim under the First Amendment remains. Defendants move the court to dismiss the complaint for failure to state a claim pursuant to the plausibility standard explained below.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. U.S., 734 F.3d 100, 102 (1st Cir.2013)(quoting FED.R.CIV.P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir.2014)(citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir.2014))(internal quotation marks omitted). Additionally, courts "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir.2013)(citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir.2011)).

"To cross the plausibility threshold, the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations and quotation marks omitted).

---

[5] The Opinion and Order at Docket No. 65 contains a general discussion of these cases, as well as the rulings which touched directly upon some of issues before this court at the preliminary injunction stage of the proceedings.

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.2011)(citing Twombly, 550 U.S. at 555)(internal quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009)(citing Iqbal, 556 U.S. at 678). "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not include 'detailed factual allegations.'" Rodriguez-Vives v. Puerto Rico Firefighters Corps, 743 F.3d 278, 283 (1st Cir.2014)(citing Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir.2013)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 681).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664-664. Nevertheless, when evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). As a result, courts should read the complaint "as a whole" and be cautious not to apply the plausibility standard "too mechanically." See Rodriguez-Vives, 743 F.3d at 283 (citing Garcia-Catalan, 734 F.3d at 101, 103).

### III.   DISCUSSION

As previously noted, Plaintiff alleges that Defendants conspired to deprive her of her civil rights pursuant to 42 U.S.C. § 1983 by removing her from her position as Chairperson of the TRBPR in violation of her rights under the First Amendment. See Docket No. 1.

### A. Section 1983

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory." <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)(internal quotation marks omitted). To prevail in a Section 1983 claim, a plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d 124, 129 (1st Cir.2005)(<u>quoting</u> <u>Romero-Barcelo v. Hernandez-Agosto</u>, 75 F.3d 23, 32 (1st Cir.1996)). For Section 1983 liability purposes, "a state employee generally acts under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." <u>West v. Atkins</u>, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Section 1983 claims require that a plaintiff plausibly plead the following three elements: deprivation of a right, a causal connection between the actor and the deprivation, and state action. <u>See</u> <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31 (1st Cir.2009); <u>see</u> <u>also</u> 42 U.S.C. § 1983. The causation element requires that the plaintiff sufficiently allege (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." <u>Concepcion v. Municipality of Gurabo</u>, 558 F.Supp.2d 149, 162 (D.P.R.2007). Moreover, a plaintiff is required to plausibly establish the link between each particular defendant and the alleged violation of federal rights. <u>See</u> <u>González-Piña v. Rodríguez</u>, 407 F.3d 425, 432 (1st Cir.2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in damages under Section 1983." <u>Pinto v. Nettleship</u>, 737 F.2d 130, 133 (1st Cir.1984).[6]

---

[6] Defendants challenge the complaint on this basis, arguing that Plaintiff failed to plausibly plead a connection between the actions undertaken by Rua-Jovet and the purported violation of her First Amendment rights. Docket No. 70 at p. 14. In her opposition, Plaintiff merely reiterates the allegations found in her complaint, specifically, that Rua-Jovet "accepted his appointment and has been acting as designated Chair since…." Docket No. 74 at p. 10. This alone does not pass muster. Nonetheless, the court will move on to the more compelling issues of the case, i.e., whether Plaintiff has stated a plausible entitlement to relief under the First Amendment.

### B. First Amendment

Plaintiff predicates her claim on the First Amendment, which "insulates public employees who hold non-policymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." Bergeron v. Cabral, 560 F.3d 1, 7 (1st Cir.2009)(citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 74–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). "The First Amendment therefore bars government officials from taking adverse employment action on the basis of a person's political affiliation, 'unless political affiliation is an appropriate requirement for the position.'" Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 92 (1st Cir.2014)(emphasis added)(quoting Méndez–Aponte v. Bonilla, 645 F.3d 60, 64 (1st Cir.2011)). A *prima facie* case of political discrimination consists of the following elements "(1) [the plaintiff] and the defendants have 'opposing political affiliations,' (2) the defendants were aware of the [plaintiff's] political affiliation[], (3) an 'adverse employment action' (e.g., an employment termination) occurred, and (4) 'political affiliation was a substantial or motivating factor for the adverse employment action.'" Ocasio-Hernandez v. Fortuño–Burset, 777 F.3d 1, 5 (1st Cir.2015)(alteration in original)(citation omitted)("Ocasio–Hernandez II").

The First Circuit has cautioned against subjecting a complaint to an overly stringent standard when assessing the plausibility of a political discrimination claim. See Rodríguez–Reyes, 711 F.3d at 54. "Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial —in a discrimination case, the *prima facie* standard— she need not plead facts sufficient to establish a *prima facie* case." Id. Accordingly, the court must determine whether the cumulative effect of the complaint's allegations, taken in their entirety, plausibly show impermissible political animus. See Ocasio-Hernandez, 640 F.3d at 14.

Against this backdrop, the court finds that the allegations in the complaint readily show that the first element of the test is met, that is, that the parties have antagonistic political affiliations. See Docket No. 1 at ¶¶ 1-3 and 12. In any event, Defendants do not challenge this element. See Docket No. 70 at p. 12. With respect to the second element – i.e., Defendants' awareness of Plaintiff's political affiliation - the

complaint alleges that Torres-Lopez was appointed to the position of Chairperson by former NPP governor Fortuño; that her political affiliation was well-known to Defendants; and that at some point in the 2012 general elections her name was considered for the NPP ticket. Docket No. 1 at ¶ 1. Again, in accordance with the applicable pleading standard, we must sidestep the conclusory nature of some of the complaint's statements and, instead, consider the totality of the pleaded facts in order to infer Defendants' knowledge of a plaintiff's politics. See Rodríguez-Reyes, 711 F.3d at 55; Ocasio-Hernandez, 640 F.3d at 12. When viewed favorably, the allegations recited herein cross the plausibility threshold.

We thus move on to the third prong of the test. In their motion to dismiss, Defendants argue that Torres-Lopez was not removed from the Chairperson position, but rather, that said position was "abolished" with the enactment of Law 11.[7] Docket No. 70 at p. 9. Thus, they contend that Torres-Lopez was not subjected to an adverse employment action. In her opposition, Plaintiff altogether fails to address this element of her claim, focusing instead on the Opinion of the Supreme Court of Puerto Rico in Diaz-Carrasquillo v.Garcia-Padilla, 191 D.P.R. 97, 2014 WL 3013335 (P.R.2014), where Court concluded that the plaintiff – who had been appointed to the position of Ombudsman for Persons with Disabilities by former Governor Fortuño - had a propriety interest limited to the fixed 10-year term of his appointment. See Certified Translation of the Opinion of the Supreme Court - CT-2013-0018, Docket No. 61-3 at pp. 34-35. The Court further determined that **consistent with the procedural due process guarantees of Article II, § 7 of the Puerto Rico Constitution** the plaintiff "could only be removed after being given notice and a hearing for having been negligent in the performance of his functions, having failed to comply with his duty or having engaged in improper conduct." Id. at p. 34.

---

[7] In Torres-Rivera, 783 F.3d at 46, the First Circuit drew a distinction between an "abolishment" case and "removal" case, the first of which concerns the "limits of the legislature's ability to effect a removal by 'destroying' an executive office only to reestablish it under a new name, and the survival of a property interest in the 'destroyed' office as a property interest in the 'new' office." A "removal" case, by contrast, deals with the limits of the legislature's power to destroy a property interest in public office –assuming that there was one– "by lifting whatever removal limitations created the property interest in the first place." Id. The case before this court would fall under the second category, despite Defendants' assertion to the contrary.

Plaintiff asserts that "[f]rom this, it is necessary to conclude that her termination constituted an adverse employment action, even though defendants allowed her to remain as an associate member of the [TRBPR]." Docket No. 74 at p. 11. In their reply, Defendants contend that Plaintiff confuses the discussion pertaining to the adverse employment action of a political discrimination claim with the due process analysis. Docket No. 79 at p. 1. Although the court agrees, it nonetheless finds that Plaintiff's claim fails for the reasons explained below.

## 1. Political Affiliation Exception

As previously stated, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir.2004)(citing Elrod v. Burns, 427 U.S. 347, 350, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Notwithstanding, a well-defined exception has been carved out and reserved for instances where political affiliation is an appropriate requirement for the effective performance of the public office involved. See id. (citing Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). "This rule ensures that representative government will not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." Ruiz–Casillas v. Camacho-Morales, 415 F.3d 127, 132 (1st Cir.2005)(citing Elrod, 427 U.S. at 367, 96 S.Ct. 2673)); see Galloza, 389 F.3d at 28 (indicating that the "policies espoused by a new administration, presumably desired by the citizens whose votes elected that administration, must be given a fair opportunity to flourish"). Furthermore, the rule allows the hiring authority (e.g., elected officials) to employ or appoint "top subordinates who are responsive to their policy goals." Maymi v. P.R. Ports Auth., 515 F.3d 20, 26 (1st Cir.2008).

Whether political affiliation is an appropriate basis for the challenged adverse employment action is a question of law for the court. See Mendez-Aponte v. Bonilla, 645 F.3d 60, 65 (1st Cir.2011). We employ a two-step analysis to make this determination, focusing first on the political nature of the employing agency, and second, on the sought after position and its specific features. See id.

For the first prong of the inquiry, the court begins with "a high-level glimpse of the purpose of the employing agency and the role that the particular position occupies within it." Galloza, 389 F.3d at 29. This entails looking at "whether the [employing] governmental unit decides issues where there is room for political disagreement on goals or their implementation." Ruiz-Casillas, 415 F.3d at 132. To cross this threshold, it is sufficient if the agency "handle[s] matters *potentially* subject to partisan political differences." Galloza, 389 F.3d at 29 (emphasis added)(citation omitted). "This assessment encompasses the extent to which the position has the capacity to 'influence[ ] the resolution of such matters.'" Foote v. Town of Bedford, 642 F.3d 80, 85–86 (1st Cir.2011)(quoting Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1258 (1st Cir.1987)).

In the case at hand, the agency in question is the TRBPR, a policymaking body pursuant to its enabling act.[8] See P.R. Laws Ann. tit. 27, §§ 267 et seq. (amended 2013). The TRBPR was created to regulate telecommunication services in Puerto Rico which directly impact the everyday lives of its residents. Id. § 265. The Legislature conferred upon the TRBPR broad regulatory, supervisory and surveillance powers, including that of introducing and enforcing public policy to ensure consumer welfare and promote competition. See id. §§ 267e-f. One of the most notable indications of the TRBPR's policy-oriented duties is the following:

---

[8] Under the Rule 12(b)(6) standard, the Court may only consider facts and documents that are part of or incorporated into the complaint; if documents outside of the pleadings are considered, the motion should be adjudicated under the more stringent standards of a Rule 56 motion for summary judgment. See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir.2009). The First Circuit has carved out exceptions to this rule for documents the authenticity of which are not disputed by the parties; for official public records; for documents that are central to plaintiff's claim; or for documents sufficiently referred to in the complaint. See id. The court may also augment the complaint's well-pleaded facts with facts susceptible to judicial notice. See Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 37 (1st Cir.2012)(supplementing the well-pleaded facts found in the complaint with reference to Puerto Rico statutes and facts susceptible to judicial notice in order to place the allegations in context). Insofar as the complaint in this case makes sufficient reference to the provisions of Law 213 and the amendments introduced by Law 11, or alternatively, because it is a matter susceptible to judicial notice, the court may still consider both Puerto Rico statutes under the standard of Rule 12(b)(6). See id.; Berrios-Romero v. Estado Libre Asociado de Puerto Rico, 641 F.3d 24, 27 (1st Cir.2011)(noting that the court "may take judicial notice of law at any time"). Thus, it is not necessary to convert the defendants' motions to dismiss into motions for summary judgment.

To clarify, the language of Law 213 cited herein is current through its December 2013 amendments and, unless otherwise noted, was not added, deleted or modified by Law 11. Therefore, it reflects what the law was at the time of Plaintiff's appointment, as well as her removal from the position of Chairperson in July 2013.

     Appear before any private entity, public organization, court, board, committee, administrative organization, department, office or agency of the Commonwealth of Puerto Rico or of the United States Government in any hearing, procedure or matter that affects or could affect the purposes of this chapter or the regulations that the Board promulgates or the interests of the consumers of telecommunications services… .

    Id. § 267f(7). Because it is also responsible for regulating access and managing consumer complaints related to public utility services, the TRBPR necessarily handles affairs that bear upon Puerto Rico's most important economic sectors. See id. Therefore, it is reasonable to conclude that the TRBPR oversees "matters of importance...[that] involve policy issues on which there is room for disagreement as to both goals and methods of implementation." Foote, 642 F.3d at 86 (citing Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir.1986)(en banc)).

    Next, the court must inquire whether the responsibilities of the Chairperson position "resemble those of a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." Ruiz-Casillas, 415 F.3d at 132 (citation omitted); see also Foote, 642 F.3d at 86 (noting that the court considers "whether the ability to do the work effectively will be enhanced by the appointment of persons who hold particular policy views")(citation omitted). The second prong "involves a further inquiry into the 'inherent powers and privileges of the position … and not to the duties actually carried out by a particular employee.'" Soto Gonzalez v. Rey Hernandez, 310 F.Supp.2d 418, 426 (D.P.R.2004)(quoting Jimenez Fuentes, 807 F.2d at 241).

    By statute, the person holding the position of Chairperson of the TRBPR is charged with presiding over all of the meetings of the Board; overseeing all administrative operations of the agency, and representing the Board in conferences or communications with other heads of Puerto Rico agencies. See P.R. Laws Ann. tit. 27, §§ 267c (amended 2013). Significantly, the Chairperson is also responsible for "representing the Board in all matters related to legislation and legislative reports…." Id. While the complaint alleges that the Chairperson position is one of "quasi-judicial and quasi-legislative nature" (Docket No. 1 at ¶ 20), this fact alone does not negate that the person occupying said position also holds sufficient administrative, discretionary, and policy-making

authority to make party affiliation an appropriate requirement. See e.g. Olmeda v. Ortiz-Quiñones, 434 F.3d 62, 66-67 (finding no First Amendment protection where the plaintiff occupied as an official of Puerto Rico agency with policy involvement at the highest level, whose functions made clear that she was involved in policymaking at least as an adviser, expected on occasion to serve as a representative of the agency itself).

Furthermore, the First Circuit has held that "an employee is not immune from political firing merely because [he or she] stands apart from partisan politics, or is not the ultimate decisionmaker in the agency, or is guided in some of his or her functions by professional or technical standards." Flynn v. City of Boston, 140 F.3d 42, 46 (1st Cir.1998)(internal citations and quotation marks omitted). "[I]t is enough that the official be *involved* in policy, even if only as an adviser, implementer, or spokesperson." Id. In this case, the court finds that the work performed by the Chairperson of the TRBPR, after taking into consideration the broad powers and policy-oriented duties of the Board itself, fall outside the constraints of the First Amendment. Having so ruled, the court is forced to conclude that Plaintiff's allegation that she was removed from her position as TRBPR Chairperson based on her political affiliation fails to plausibly state a First Amendment claim of political discrimination.[9]

In light of the foregoing, the court **GRANTS** Defendants' motions to dismiss Plaintiff's First Amendment claim, and therefore, the claim is **DISMISSED WITH PREJUDICE.**

### C. Civil Rights Conspiracy

Plaintiff also brings a civil rights conspiracy claim under 42 U.S.C. § 1985(3). Docket No. 1 at ¶ 30. Section 1985(3) "permits suits against those who conspire to deprive others "of the equal protection of the laws, or of the equal privileges and immunities under the law…." Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 4 (1st Cir.2012)(citing 42 U.S.C. § 1985(3)). The First Circuit has explained that to state an actionable claim under Section 1985(3), the plaintiff must plead the following four elements: (1) a conspiracy; (2) a conspiratorial purpose to deprive the

---

[9] As such, the court will not will not address Defendants' alternative grounds for dismissal, including the arguments pertaining to absolute, official, qualified and Eleventh Amendment immunity. See Docket No. 70.

plaintiff of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) either injury to the person or property, or a deprivation of a constitutionally protected right. See Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir.2008) (citing Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)).

     The Defendants request dismissal of Plaintiff's Section 1985(3) claim, arguing that the complaint fails to plausibly establish a civil rights conspiracy claim against them, either in their official or individual capacities. Docket No. 70 at pp. 15-16. In her opposition, Plaintiff fails to develop an argument in support of her claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Glob. NAPs, Inc. v. Verizon New England, Inc., 706 F.3d 8, 16 (1st Cir.2013)(citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). In any event, the First Circuit has held that Section 1985(3) "provides no remedy for animus on the basis of political beliefs." Perez-Sanchez, 531 F.3d at 109. As such, Plaintiff's claim – brought solely on account of her NPP status – necessarily fails.

     In accordance with the foregoing, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's Section 1985(3) claim. Consequently, that claim, too, is **DISMISSED WITH PREJUDICE.**

### D. Supplemental Puerto Rico Law Claims

     Plaintiff's remaining claims are grounded on Puerto Rico law. Defendants have requested the dismissal of these claims. See Docket No. 70 at p. 19. Since the federal claims have been dismissed and no other grounds for jurisdiction exist, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. See Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)(explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(stating "if the federal claims are dismissed before trial,...the state law claims should be dismissed as well."). Accordingly, Plaintiff's claims brought pursuant to Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE**.

## IV.   CONCLUSION

For the reasons stated above, the court hereby **GRANTS** Defendants' motions to dismiss (Docket Nos. 69 and 70). Accordingly, Plaintiff's claims of political discrimination brought pursuant to the First Amendment are hereby **DISMISSED WITH PREJUDICE.** Plaintiff's claims brought pursuant to Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 21, 2016.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**
